## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERTO BROWN,** | : | |
| **Petitioner,** | : | |
| | : | **No. 1:20-cv-1463** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **H. QUAY,** | : | |
| **Respondent** | : | |

## MEMORANDUM

On August 18, 2020, *pro se* Petitioner Roberto Brown ("Petitioner"), who is currently incarcerated at the United States Penitentiary Allenwood in White Deer, Pennsylvania ("USP Allenwood"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner challenges the decision of a Disciplinary Hearing Officer ("DHO") who found him guilty of violating Code 199. (*Id.*) After Petitioner paid the requisite filing fee, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks. (Doc. No. 4.) Respondent filed his response on September 14, 2020. (Doc. No. 6.) Petitioner has filed neither a traverse nor a motion seeking an extension of time to do so. For the following reasons, the Court will deny Petitioner's § 2241 petition.

## I.      BACKGROUND

On July 17, 2019, a staff member working in Unit 2B at USP Allenwood observed that Petitioner appeared "disoriented and confused" as he approached the unit metal detector. (Doc. No. 6-1 at 11.) Petitioner's speech was slurred, and he dropped his inmate ID card. (*Id.*) The officer notified the compound, and Petitioner was escorted to the lieutenant's office. (*Id.*) Health Services reviewed Petitioner's medical file and determined that he "has no medical condition nor is he on any prescribed medication which would alter his mental state in this fashion." (*Id.*) Health Service staff concluded that Petitioner's "behavior [was] the result of ingesting, smoking or inhaling a foreign substance." (*Id.*)

Later that day, the office completed Incident Report 3280452, charging Petitioner with a violation of Code 112, use of any narcotics, drugs, alcohol, intoxicants, or related paraphernalia not prescribed by medical staff. (*Id.*) Petitioner received a copy of the Incident Report on July 18, 2019. (*Id.*) Petitioner was advised of his rights, including his right to remain silent. (*Id.* at 12-13.) Petitioner indicated that he understood his rights and noted "that his medication was recently increased, and he had just woken up from a nap when staff observed his disoriented behavior." (*Id.* at 13.) On July 19, 2019, the Unit Discipline Committee ("UDC") referred the

Incident Report to the DHO "due to [Petitioner's] PLRA commitment status, and sanctions only the DHO may impose." (*Id.* at 12.)

Petitioner appeared before the DHO on July 29, 2019. (*Id.* at 1.) Petitioner requested Unit Manager Rodarmel as his staff representative, and Unit Manager Rodarmel appeared at the hearing. (*Id.*) Unit Manager Rodarmel stated that he had no further information to present, that there was no video to review, and that Petitioner "had been prescribed his medication for the past five years without any ill effects." (*Id.*) Petitioner waived his right to call witnesses and stated: "I wasn't high, I didn't do any drugs or smoke K2." (*Id.*)

The DHO found the charge of Code 112 to be supported by the greater weight of the evidence. (*Id.* at 37.) In doing so, the DHO considered the Incident Report as well as the July 17, 2019 medical assessment of Petitioner. (*Id.*) The DHO sanctioned Petitioner with thirty (30) days of disciplinary segregation, disallowance of forty-one (41) days of good conduct time, two (2) years' loss of phone and visitation privileges, and a fine of $500.00. (*Id.*) The DHO noted that this was Petitioner's third Code 112 violation. (*Id.*) On August 26, 2019, the DHO amended his report to reflect an increase in the number of days of disciplinary segregation, from thirty (30) days to sixty (60) days. (*Id.* at 20.) On March 30, 2020, the DHO report was amended and reissued a second time after the DHO amended the charge

to be a violation of Code 199, conduct which disrupts-most like Code 112.  (*Id.* at 9.)   The DHO noted that a rehearing was not necessary because the report was amended to reflect the change in code and the level of severity had not changed. (*Id.*)  Petitioner received a copy of the second amended DHO report on March 30, 2020.  (*Id.* at 10.)  Petitioner subsequently exhausted his administrative appeals regarding this Incident Report.

Petitioner then filed the instant § 2241 petition.  (Doc. No. 1.)  In his petition, Petitioner argues that his due process rights were violated because: (1) he was found guilty "based [on] speculation alone with absolutely no evidence"; (2) he was not given a drug test despite his request for one; (3) the DHO lied by stating that Petitioner provided no evidence because Petitioner's staff representative provided Petitioner's active prescription chart; and (4) he has "multiple documented medical issues that would cause him to appear intoxicated."  (*Id.* at 6-8.)  As relief, Petitioner requests that the Incident Report be expunged, the DHO's decision be reversed, his good conduct time be restored, his $500.00 be refunded, and his privileges be restored.  (*Id.* at 8.)

## II.   DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  *Torres v. Fauver*, 292 F.3d 141 (3d

Cir. 2002).  It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  *Id.* at 557.  Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  *Wolff*, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  *Superintendent v. Hill*,

472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the

7

available sanctions listed in Table 1 and 2 of § 541.3.  *Id.*  Finally, the written report

or decision of the DHO will contain the following: (1) whether the inmate was

advised of his or her rights during the proceedings; (2) the evidence relied on by the

DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and

(5) the reasons for the sanctions imposed.  *Id.*

### A.    Petitioner Received His Due Process Rights

Contrary to Petitioner's arguments, he received his procedural due process

rights under *Wolff* and the BOP regulations.  The record reflects that Petitioner

received a copy of the Incident Report on June 17, 2019, and the hearing before the

DHO was held on July 18, 2019.  (Doc. No. 6-1 at 11.)  Unit Manager Rodarmel

appeared as Petitioner's staff representative at his hearing before the DHO.  (*Id.* at

8.)  Petitioner waived his right to call witnesses.  (*Id.*)  Petitioner received copies of

all three (3) of the DHO's written decisions, which included a review of the evidence

relied upon and the rationale behind the disciplinary action, on March 30, 2020,

August 26, 2019, and August 1, 2019, respectively.  (*Id.* at 10, 21, 38.)

In his § 2241 petition, Petitioner suggests that his due process rights were

violated when the DHO "lied in his report when he claimed [Petitioner] presented

no evidence."  (Doc. No. 1 at 7.)  According to Petitioner, his staff representative

"read into the record the side effects [of] at least 3 medications that cause him to

appear intoxicated." (*Id.*)  Petitioner suggests that he asked the DHO to review his medical chart, and the DHO "refused to look at his active prescription chart at all." (*Id.*)  According to Petitioner, his medical records would have shown that he has multiple medical issues and takes medications that cause him to appear intoxicated. (*Id.* at 7-8.)  Finally, Petitioner suggests that he asked for a drug test but was refused. (*Id.* at 7.)

To the extent that Petitioner believes the requested documentation was exculpatory evidence, the United States Court of Appeals for the Third Circuit has noted that the "[United States Court of Appeals for the] Seventh Circuit . . . has held that the rule of *Brady v. Maryland* requiring the disclosure of material exculpatory evidence applies to prison disciplinary proceedings."  *Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010) (citing *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981)).  Nothing in the record, however, supports Petitioner's assertion that his requests for consideration of this evidence was denied.  In his decision, the DHO specifically indicated that "no documentary evidence was provided for consideration." (Doc. No. 6-1 at 8.)  Moreover, Petitioner's staff representative indicated that he "had no further information to present, nor statement to make regarding this case." (*Id.*)  The staff representative indicated that Petitioner "had been prescribed his medication for the past five years without any ill effects." (*Id.*)

Petitioner has not cited any evidence to the Court that contradicts the DHO's report. Moreover, with respect to Petitioner's assertion that he was denied a drug test, "the right to present documentary evidence [does] not encompass a right to compel prison officials to conduct . . . supplemental investigations and analyses, to generate new evidence at the inmate's behest." *Chavis v. Hazlewood*, No. 19-cv-488-LM, 2020 WL 1290355, at *5 (D.N.H. Mar. 18, 2020) (quoting *Bridgeman v. Ault*, No. 98-3681SI, 1999 WL 425834, at *1-2 (8th Cir. June 14, 1999)).  Accordingly, the Court concludes that Petitioner's due process rights were not violated by the alleged refusal to consider documentary evidence.  *See Laor v. Fed. Bureau of Prisons*, No. 08-3532 (RBK), 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was mot denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied"); *see also Gomez v. Warden FCI Allenwood*, No. 1:20-cv-455, 2020 WL 2556916, at *4 (M.D. Pa. May 20, 2020) (citing *Laor* for the conclusion that the inmate-petitioner's request for video surveillance was not denied because nothing in the record supported the petitioner's assertion that he requested such video).

Petitioner suggests further that his due process rights were violated because the DHO was biased.  (Doc. No. 1 at 8.)  He refers to the DHO as "an extremist."

(*Id.*)  While Petitioner is correct that he was entitled to an impartial hearing officer, *see Wolff*, 418 U.S. at 571, his conclusory allegation of bias cannot stand.  In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body."  *See Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). Petitioner simply has not demonstrated that the DHO was "personally or substantially involved the circumstances underlying [the investigation of the] charge" such that the DHO should not have presided over his hearing.  *See Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008).  Petitioner's "generalized critique" of the DHO is insufficient to demonstrate the degree of bias necessary to sustain a due process violation.  *See Lasko v. Holt*, 334 F. App'x 474, 476 (3d Cir. 2009).

In sum, Petitioner's claims that his due process rights were violated by an alleged refusal by the DHO to consider documentary evidence and because the DHO was biased lack merit.  For the reasons discussed above, the Court finds that Petitioner received all the due process procedures to which he was entitled.

## B.    The DHO's Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO's reports, and the clinical encounter

11

report from Health Services' examination of Petitioner on July 17, 2019.  (Doc. No.

6-1.)   These documents unequivocally establish that there was some evidence

supporting the DHO's decision.

The DHO stated the following in his amended decision finding Petitioner

guilty of Code 199, conduct which disrupts-most like Code 112:

During this disciplinary hearing, the following information was evidentiary and documented by the DHO in his findings.  [Petitioner's] involvement in the incident, as noted in Section 11 of Incident Report #3280452, as provided by J. Baptiste, Senior Officer, was reviewed.  Paraphrased, writes: At 12:30 PM while working as the Unit 2B Officer, I observed [Petitioner] as he came to the unit metal detector he appeared disoriented and confused.  [Petitioner's] speech was slurred as he dropped his inmate ID card[.]   I notified Compound and [Petitioner] was escorted to the Lieutenant's office.   Additionally, Health Service staff conducted a review of [Petitioner's] medical file and determined [Petitioner] has no medical condition nor is he on any prescribed medication which would alter his mental state in this fashion and in their medical opinion his behavior is the result of ingesting, smoking or inhaling a foreign substance.

Inculpatory evidence in the form of a Medical Assessment Report conducted by NRP Rishel dated 7/17/19 corroborated the evidence cited int his report.  The assessment report states: Inmate is observed displaying an altered level of consciousness related to unclear pathology after assessing patient.  A review of the inmate's medical records show that he is currently not prescribed any medications that would cause the observed change in behavior.  The inmate's behavior does not appear to be medically related and based on the observations/symptoms displayed possibly caused by ingesting, smoking or inhaling a foreign substance.

The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing

false information.  The DHI finds the charge to be best supported as code 199 MOST LIKE CODE 112.  This charge is to be supported in this case based upon the greater weight of evidence cited in this report as well as the actions displayed by the inmate and evaluated by medical personnel.  There is no need for a rehearing based on the report being amended to reflect the change in misconduct code.  The level of severity has not changed.

Upon questioning by the DHO, [Petitioner] denied the charge.  He elaborated upon his plea by stating[] he wasn't high.  After the consideration of evidence documented above, the DHO has drawn the conclusion that greater weight of the evidence, listed in the paragraphs above, supports the finding [that Petitioner] committed the prohibited act(s) of Conduct which disrupts-most like-use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by the medical staff, Code(s) 199 most like code 112, on 07/17/19, at or about 12:30 PM, in Unit 2B common Area, at USP Allenwood.

(Doc. No. 6-1 at 9.)  Moreover, the DHO explained the imposed sanctions, stating:

[Petitioner's] conduct which disrupts most like the use of drugs (3rd OFFENSE for code 112) potentially threatens both the orderly running of the facility and the safety of both staff and inmates.  Drug use is preceded by the illicit substance being introduced by breaching the secure perimeter of the institution.  The purchase of drugs tends to lead to debt and drug related debt has great potential to lead to violence in relation to payment/non-payment of the same.  Inmates are the target for this violence and staff have great potential for injury responding to this violence.  Further, being under the influence of drugs limits inmate's ability to be involved in meaningful correctional programming.  With this, Disciplinary Segregation and the Disallowance of Good Conduct Time is sanctioned in an effort to punish [Petitioner] for his behavior, while the Loss of Privilege (Phone and Visit) and a Monetary Fine are sanctioned in an effort to deter future misconduct.  The DHO finds the charge for code 112 to warrant the Disallowance of Good Conduct Time based on the offense being of

13

a highly aggravated offense which greatly jeopardizes the safety of staff
and inmates.

(*Id.* at 10.)

Petitioner suggests that the evidence was insufficient to support the DHO's
finding because "he was found guilty of using drugs based on speculation alone with
absolutely no evidence." (Doc. No. 1 at 6.)  According to Petitioner, the "medical
staff's only supporting evidence was all speculation." (*Id.*)  Petitioner argues that
his medical records indicate that he suffers several ailments and is prescribed certain
medications that make him appear to be intoxicated. (*Id.* at 7-8.)  However, when
an inmate challenges the sufficiency of the evidence supporting the DHO's decision,
"the 'some evidence' standard does not require . . . independent assessment of the
credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F.
App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56); *see also Donahue*,
398 F. App'x at 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh
the evidence, or re-assess the credibility of [a petitioner's] defense").  In any event,
the record before the Court refutes Petitioner's claim that the DHO's decision was
not based upon any evidence.  The DHO considered the Medical Assessment Report
completed by NRP Rishel on July 17, 2019. (Doc. No. 6-1 at 9.)  NRP Rishel
reviewed Petitioner's medical records and concluded that he was "currently not
prescribed any medications that would cause the observed change in behavior." (*Id.*

14

at 14.)  In her opinion, Petitioner's "behavior [did] not appear medical related, and based on the observations/symptoms displayed [was] possibly caused from ingesting, smoking, or inhaling[] a foreign substance."  (*Id.*)  When questioned during the assessment, Petitioner denied any mobility problems, was oriented, and had a normal gait/transferring.  (*Id.* at 25.)  In sum, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of a violation of Code 112.  *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").  Accordingly, the Court will deny his § 2241 petition.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner was accorded all of his due process rights under *Wolff* and the BOP regulations, and that there was some evidence supporting the DHO's decision.  Accordingly, Petitioner's § 2241 petition (Doc. No. 1) will be denied.  An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated:  October 7, 2020

15